**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**DARRYL RICHARDSON,**

          **Petitioner,**

**VS.**

**UNITED STATES OF AMERICA,**

          **Respondent.**

**Case No. 09-22349-CIV-SEITZ
04-20705-CR-SEITZ**

---

**MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR DISCOVERY AND PRODUCTION OF DOCUMENTS PURSUANT TO RULE 6, GOVERNING 28 U.S.C. §2255 PROCEEDINGS**

---

**TO THE HONORABLE JUDGE JONATHAN GOODMAN:**

The petitioner, Darryl Richardson, pro se, respectfully files this memorandum brief in support of his motion for discovery and production of documents pursuant to Rule 6(a)&(b), governing 28 U.S.C. §2255 proceedings.

Rule 6 of the Rules governing 28 U.S.C. §§2254 and 2254 proceedings entitles litigants to request discovery process available under the Federal Rules of Civil Procedure, if good cause is shown and the court exercises its discretion allowing discovery. Good cause for discovery exists under Rule 6(a) governing Section 2255 cases (Habeas Rule) where specific allegations before the court showed reason to believe that the petitioner may, if the facts are fully developed be able to demonstrate that he is entitled to relief. See **Harris v. Nelson,** **394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)**; **Bracy v. Gambley, 520 U.S. 899, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1998)**; **Payne v. Bell, 89 F.Supp.2d 967 (W.D. Tenn. 2000).** Mr. Richardson makes the necessary showing for disclosure.

1

Petitioner filed a detailed §2255 motion asserting defense counsel provide constitutionally ineffective assistance of counsel for failure to investigate, interview, call witnesses and present evidence to prove that several government witnesses "jumped on Mr. Richardson's case" by providing false testimony to obtain a Rule 35(b) sentence reduction. **See §2255 M.B. at pages 9, 10, 24-35.**

Mr. Richardson requested counsel Arroyave to subpoena Robbie Horton, Marvin Griffin, Roshawn Davis and Keith Biggins to his second and third trial and to investigate other witnesses in order to prove that those government witnesses jumped on Mr. Richardson's case. **See §2255 M.B. at p. 28 ¶2. See also Exhibit "A"** Darryl Richardson's affidavit.

Mr. Richardson seeks leave to conduct discovery, production of documents and disclosure from the United States of all typed, written, or electronic versions of any and all e-mails, letters, DEA Reports, and FBI Reports related to Marvin Griffin, Keith Biggins, Rocky Marshall, Norris Benton, Gregory Barnes, Jerdy Miller, Robbie Horton, Derrick Blake, Christopher Mitchell, Roshawn Davis and Lamont Harrision, which is in the possession of the United States and its agencies. Disclosure of these documents will provide the necessary link to establish that trial counsel's performance fell below an objective standard of reasonableness and that Mr. Richardson was prejudiced by counsel's deficiency.

**WHEREFORE** based on the above, **DARRYL RICHARDSON,** urges this Court to **GRANT** this motion and to appoint counsel for the

2

disclosure.

Respectfully submitted on this _10_ day of December 2010.

DARRYL RICHARDSON
PRO SE REPRESENTATION
2680 HWY 301 SOUTH
JESUP, GEORGIA 31599

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this foregoing instrument has been mailed with first class postage prepaid affixed thereto on this _20_ day of December 2010, by hand delivering a copy of the same to the mail room Staff at the Federal Correctional Institution, Jesup, Georgia, for processing through the internal legal mail system address to: Assistant United States Attorney, Karen E. Rochlin, 99 N.E. 4th Street, Miami, FL 33132.

Executed on this _20_ day of December 2010.

DARRYL RICHARDSON

3

*Law Offices of*
# OSCAR ARROYAVE

GROVE FOREST PLAZA, SUITE 206
2937 SOUTHWEST 27ᵀᴴ AVENUE
MIAMI, FLORIDA 33133-3703

TELEPHONE (305)444-0022
FACSIMILE (305)358-1916
EMAIL: arroyavelaw@cs.com

October 22, 2010

Darryl Richardson
Reg. No. 63986-004
FCI-Jesup
2680 301 South
Jesup, GA 31599

Dear Darryl:

I hope that this letter finds you well. I want you to know that I think about your case all the time and I still can't believe how all of those cooperating witness manipulated the system to help the government convict you.

I recently came across an article in USA Today regarding prosecutorial misconduct that I thought would be of interest to you. I suspect that you might have already read it. The article is about the case of "Nino" Lyons. As a result of the prosecutor's misconduct, Lyons spent three years in jail before he was exonerated by the judge. Apparently, the government used several lying snitches to obtain his conviction (sounds familiar?) In many regards, you could substitute your name for the name of Nino Lyons and it would be the same situation that we encountered in your trial.

I think that it may be worth while to follow the lives of the witnesses who testified in your case. I don't suspect that they would be agreeable to an interview anytime in the near future; but perhaps, in a few years some of them might be willing to be interviewed as to how they became government witnesses and whether or not the prosecutors held back any exculpatory evidence. I am certain that if the cooperating witnesses in your case are investigated years down the line, something favorable to you will be uncovered. In the meantime, I will be on the lookout for any encounters these individuals have with law enforcement.

Best Regards,

Oscar Arroyave
enc.

Exhibit "1"

## AFFIDAVIT OF DARRYL RICHARDSON

**BEFORE ME** the undersigned notary public personally appeared a person named Darryl Richardson, who after being duly sworn stated and deposed that the following facts are true and correct to wit:

1. Mr. Richardson instructed counsel Arroyave to check into a plea offer after the first and second trial under 21 U.S.C. §841(b)(1)(C), which would carry up to twenty (20) year maximum sentence. Counsel Arroyave refused to seek a plea offer and informed Mr. Richardson that he would be crazy to take a plea in this case.

2. Mr. Richardson instructed counsel Arroyave to file a motion to dismiss the indictment because the trial failed to start within 70 days as mandated by statute governing the speedy trial. Counsel Arroyave ignored Mr. Richardson's request.

3. Counsel Arroyave failed to file a pretrial motion to exclude the admissibility of hearsay of non-coconspiracter's statements under Rules 104(a) and 801(d)(2)(E), knowing from the previous trials that the United States would conceded that Lamont Harrison, Derrick Gloster and Jurdy Miller weren't actually participants in the conspiracy See, e.g., (T.Tr.p.46-47,1/24/06). Counsel Arroyave should have moved to excluded there testimony because they don't qualify as a participant in the conspiracy under Rule 801(d)(2)(E), and should have been prohibited from testifying as a coconspirator.

4. Mr. Richardson explained to counsel Arroyave that in June and July of 1999 that he contacted everybody that he brought and sold cocaine to and informed them that he no longer participated in the drug business because Gregory Barnes had put the "feds" and other law enforcement agencies on him and he was finished. Mr. Richardson advised everybody that he was moving back to Miami and not to come around his house because law enforcement had been stopping everybody coming and going from his residence. After, Mr. Richardson informed counsel Arroyave of these facts, counsel Arroyave failed to advise Mr. Richardson that he had an arguable withdrawal from conspiracy defense.

5. Mr. Richardson would have testified that during his and Mr. Barnes entire relationship that he probably sold approximately 27 kilograms of cocaine for Mr. Barnes. Mr. Richardson would have testified that he never did a drug deal with Robert Horton, Norris Benton, Lamont Harrison, Christopher Mitchell, or Derrick Gloster, and that they had to have obtain their information about him from Marvin Griffin. Mr. Richardson would have testified that in July 1999 he quite the drug business because Gregory Barnes had put the feds and other law enforcement agencies on him. Mr. Richardson would have testified Norris Benton and Robert Horton had never been to his apartment or residence in Atlanta and that's the reason neither of them could describe Mr. Richardson's apartment or resident.

Exhibit "A"

6. Mr. Richardson would have testified if counsel Arroyave had advised him of the withdrawal of conspiracy defense, and his testimony would have required this Court to give a withdrawal from conspiracy, and a statute of limitation jury instruction.

7. Mr. Richardson instructed counsel Arroyave to investigate and call witness Robbie (Robert) Horton, Marvin Griffin, Roshawn Davis, and Keith Biggins to offer as proof that certain government witnesses "jumped on Mr. Richardson's case" to provide false testimony in order to obtain a Rule 35(b) sentence reduction." Counsel Arroyave never investigated these witnesses nor did he interviewed them and failed to take action whatsoever.

8. Mr. Richardson explained in detail to counsel Arroyave what he thought each witness would testify to and the reasons why. Mr. Richardson provided counsel Arroyave with letters from Keith Biggins stating that he (Mr. Biggins) knew that some of the witnesses had "jumped on Mr. Richardson's case," and that he knew that Mr. Richardson had never done any drug deals with those witnesses, and that he was willing to expose the government witnesses false testimony used in order to obtain a Rule 35(b) sentence reduction. See **Exhibit** **"B"** Mr. Keith Biggins' affidavit.

9. Mr. Richardson explained to counsel Arroyave that Marvin Griffin is the only person who could have told Robbie Horton, Lamont Harrison, Narvo (Norris) Benton, and Rocky Marshall the necessary facts where the could "jump on Mr. Richardson's case" and to testify against him to obtain a Rule 35(b) sentence reduction from the government. See **Exhibit "B"** Mr. Biggins' affidavit. Counsel Arroyave failed to interview or investigate Marvin Griffin's to see what his testimony would have been, if he called him as a witness.

10. Mr. Richardson instructed counsel Arroyave to subpoena Roshawn Davis in order to show that Lamont Harrison and Christopher Mitchell were lying and to show the conflicting testimony for the statue of limitations jury instruction. Mr. Roshawn Davis would have testified just like he did in Mr. Richardson's second trial under oath. See (ST.Tr.p. 55). **See also Exhibit "___"** Mr. Davis's testimony attached hereto.

11. Mr. Richardson instructed counsel Arroyave to subpoena and call Robert (Robbie) Horton as a witness because him and Norris Benton were suppose to be partner's and they couldn't tell the same story. The jury after hearing their inconsistent testimony and Mr. Biggin's testimony would have found that the government witnesses Robbie Horton, Norris Benton, Jurdy Miller, Lamont Harrison, and Derrick Gloster "jumped on Mr. Richardson's case" and were providing false testimony in hopes of obtaining a governmental Rule 35(b) sentence reduction. See **Exhibit "B"** Mr. Biggins' affidavit.

12.   Counsel Arroyave failed to object, move for a mistrial, and request to voir dire the entire jury panel after he discovered juror King had provided inaccurate information during voir dire examination, exposed the entire panel to extrinsic evidence, and vouched for the government's main witness Gregory Barnes prior to deliberations in the jury room.

13. Counsel Arroyave failed to adequately cross-examine the government witnesses and present evidence of multiple conspiracies and introduce the government witnesses plea agreements showing that they conspired with other people in other conspiracies making Mr. Richardson part of their conspiracy.

14. Mr. Richardson instructed counsel Arroyave to provide the Court with a special verdict in accordance to the Sentencing Guidelines Drug Levels calculation requiring the jury to determine the drug quantity of his involvement because of the inconsistent testimony and contradictions. Mr. Richardson explained to counsel Arroyave that Yellow had received this instruction in his trial by this same court.

15. Mr. Richardson advised counsel Arroyave that he had never did no where near a 130 kilograms of cocaine with Mr. Barnes and that Mr. Barnes did not testify that he did that much. In fact, Mr. Richardson explained to counsel Arroyave that Gregory Barnes' plan included Mr. Richardson selling drugs on the street corner which caused many disputes between Mr. Barnes and Mr. Richardson because he did not come to Atlanta to sell drugs on the street corner. Mr. Richardson explained to counsel Arroyave that he probably sold around 6-kilos of cocaine from September through December 1989. From January through February 1990 he probably sold approximately 3 kilograms of cocaine fir Mr. Barnes and after that he took some of Mr. Barnes money and left town until approximately February 1991. From approximately February 1991 to August 1992 he probably sold approximately 18 kilograms of cocaine for Mr. Barnes. A total of approximately 27 kilograms of cocaine during Mr. Richardson and Mr. Barnes' entire relationship.

16. Mr. Richardson explained to counsel Arroyave that he never got a probation on the simply battery charge in Atlanta and requested him to obtain a copy of the records in that case. Counsel Arroyave failed to obtain a copy of the records in that case and allowed the government to present erroneous facts stating that he received a 12 month probation to improperly bolster his sentence for criminal history points that should have counted.

Executed on this ___7___ day of ___August___ , 20___.

_Darryl Richardson_
Darryl Richardson

## DECLARATION

I, Darryl Richardson, hereby declare under penalty of perjury pursuant to **Title 28 United States Code, Section 1746,** that I have read this affidavit and the 28 U.S.C. §2255 motion to vacate, set aside or correct sentence and its memorandum brief in support of said motion and the facts stated therein are true and correct to the best of my knowledge and memory.

Executed on this 3 day of August 2009.

Darryl Richardson

STATE OF FLORIDA
COUNTY OF COLEMAN

AFFIDAVIT

I Keith Lapell Biggins,do hereby swear that the following
statements is true and correct.
After the second trial of Darryl Richardson I wrote seve-
ral letters to Darryl urging him to have his attorney co-
ntact me concerning my knowledge of testimony known to
me to be false,that was made by several individuals hous-
ed with me at F.C.I. Miami. prior to  I was housed with
Jesus Wilson a.k.a. Zeus in September of 1999,in the San-
ta Rosa County Jail,in Santa Rosa,Fl..I was on a writ on
behalf of the Federal Goverment,Northern District of Flo-
rida,Pensacola Divsion,in the case of United States v.
Wayne Parker.During the months we were housed together
Zeus attempted to recruit people to assist in the inves-
tigation of Darryl Richardson,known to as Piccalo.At that
time no one was interested in jumping    ichardsons case.
Marvin Griffin a.k.a. MG, was a childhood friend of Darryl
and he was housed in Coral Unit with me in F.C.I. Miami.
One day Marvin received a letter with a photo enclosed,an
the photo was of Darryl Richardson,a.k.a. Piccalo,and I
asked Marvin could i have it because I had not seen Pic-
calo in years,so MG gave it  o m  ndI pl c      v
picture board.The photo was MG and Piccalo standing out-
side of a limosuine that MG said he rented for a concert.
During this time Det.Joe Gross was doing his investigation
of Darryl Richardson and I was aware of numerous people
speaking with MG trying to get information on Piccalo,and
who to contact with the information they have.
The following individuals to my knowledge did not know
Darryl Richardson prior to his trial and until they seen
the photo I had placed on my wall.Rocky Marshall a.k.a.
Rock,Norris Benton,and others,conspired with MG to fabri-
cate testimony against Darryl Richardson,and to establish
that they were business associates.I found this out when
Robbie Horton returned back to F.C.I. Miami,after darryls
second trial.I was befriended by Lamont Harris a.k.a. Bal-
lie while incarcerated at F.C.I. Miami,and while looking
through Ballies photo album I saw a photo of Darryl,and I
said,"Look at my dawg Piccalo" and Ballie told me that the
picture was in (Cancun Mexico),and his brother had sent
them to him,or he took them while he was in Cancun Mexico.
That lead me to believe that Ballie knew Darryl personally.
One afternoon MG came to my room and told me that he had
just finish speaking to Joe Gross,and he told me to tell
you to call him,and I did so.Det. Gross ask me did I know
Lamont Harris,and Iw was not familiar with the name so
Det. Gross said they call him Ballie,and I made it clear
that he was a friend of mine. Det. Gross ask me to have
Ballie call him because Ballie sent some pictures to him
and he needed for Ballie to identify the individuals.I did
as I was asked and Ballie was upset to know that I knew he
was cooperating,but i assured him that I would not tell no
one,and I did not.

(1 of 2)

Exhibit "B"

I also found out from Robbie Horton that Lamont Harris was try-
to jump on Piccalos case and that when Ballie left on writ that
he was going to testify against Piccalo.Robbie and Ballie had
got acquanted because they both lived in (Gator Unit) together.
Robbie gave Ballie information that he had acquired from indi-
viduals at F.C.I. Miami,and from the Atlanta,Georgia area,hwere
Robbie operated his drug organization,that he was subsequently
indicted and plead guilty to drug conspiracy charges.
After Darryl second trial Robbie returned to F.C.I. Miami.and
I heard that Robbie had got caught lying under oath,so I called
Det. Gross and Det.Gross asked me,"Did i think Robbie Horton
was lying" and I answered,"Yes".
Darryl Richardsons attorney never contacted me concerning the
information/assistance that I tried to offer to Darryl.In April
2005,I was transfered to F.C.C.-Medium,in Coleman,Fl, where
Robbie here w          and in 2006,Rocky Marshall and Norris
Benton,both came to the facility,and was housed in the same
unit as me,(A-1)Skills Unit. Rocky bragged about how Piccalo
helped to set the captives free,and months thereafter,Rocky re-
ceived immedeate release. In the interesr of Justice,I remain
willing to offer TRUE and COMPLETE testimony and cooperation in
this matter.AFFIANT FURTHER SAYETH NAUGHT.

UNDER THE PENALTY OF PERJURY,28 U.S.C. 1746,I HEREBY DECLARE
THAT THE FOREGOING AFFIDAVIT AND THE FACTS STATED HERIN ARE
TRUE AND CORRECT.

05-22-09
Date

Keith L. Biggins
AFFIANT